## L. C. BATES COMPANY, INC. *v.* AUSTIN, NICHOLS AND COMPANY, INC.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued April 5—decided May 16, 1956

*T. Holmes Bracken,* for the appellant (plaintiff).

*Wallace R. Burke,* with whom, on the brief, was *John J. Daly,* for the appellee (defendant).

Wynne, J. In this action the plaintiff is seeking to recover a 5 per cent handling charge on certain foreign liquors that were delivered shortly after the plaintiff had sold its wholesale liquor business to the defendant. It appears from so much of the finding as is not challenged that the following facts were established: In August and September, 1951, and prior thereto, the plaintiff was operating a wholesale liquor business in New Haven and other places in Connecticut. The defendant was also operating a wholesale liquor business in the same general territory. Late in August or early in September, 1951, Vernal W. Bates, president of the plaintiff, went to New York with Joseph J. Heathy, general manager of the plaintiff, to negotiate for the sale of its business to the defendant. A contract was entered into by the two corporations in October, 1951. The contract shows that the defendant paid the plaintiff $25,000 for its business and good will. The contract also provided for payment by the defendant for all liquors on hand. It made no reference to foreign liquors on order. The plaintiff in fact had on order in England and France 250 cases of whiskey, a small amount of gin and about 40 cases of wine. It is conceded that the plaintiff could have canceled the orders and the liquors would not have been shipped.

The dispute which is here presented arises as follows: In the short period prior to the execution of the contract, Bates, according to his claim, had a conversation with Heathy, who, while admittedly still in the employ of the plaintiff, had an offer to enter the employment of the defendant when the contract between the two corporations became effective. Whatever the conversation may have been, Bates did not take steps to prevent the importation of the foreign liquors. When they arrived, con-

signed to the plaintiff, they were turned over to the defendant, and it paid the amount of the invoices. It is the claim of the plaintiff that on the occasion of the conversation had by Bates and Heathy, the latter, who was expecting to enter the employment of the defendant, urged Bates to let the orders for the foreign liquors stand. It is also claimed that Heathy knew that Bates expected that the plaintiff would be paid, in addition to the cost of the liquors, 5 per cent of the price as a handling charge. Heathy admits that a conversation of this general tenor may have been had. The sole question presented, therefore, is whether there is any legal obligation on the part of the defendant to pay the plaintiff a commission for handling charges.

It is clear that when the conversation took place between Bates and Heathy the latter was still an employee of the plaintiff, even though he may have decided to enter the employment of the defendant on the effective date of the contract between the corporations. When the foreign liquors arrived, the plaintiff had retired from business. The defendant, with Heathy serving as its branch manager, was engaged in active business, its own and the business obtained by purchase from the plaintiff. The court found that Heathy was not the agent of the defendant at the time he had whatever conversation took place between him and Bates. It was the plaintiff's burden to prove agency. *Cyclone Fence Co.* v. *McAviney,* 121 Conn. 656, 659, 186 A. 635.

The rule that the knowledge of an agent is imputed to the principal applies only to such knowledge as was acquired by the agent during the existence of the agency or, having been acquired prior to the beginning of the agency, was present in the mind of the agent while he was acting for the principal

or was acquired so recently as to raise a presumption that the agent still had it in mind. *McSweeney v. Prudential Ins. Co.,* 128 F.2d 660, 664; *Columbia Pictures Corporation* v. *DeToth,* 87 Cal. App. 2d 620, 631, 197 P.2d 580; *Aiken Petroleum Co.* v. *National Petroleum Underwriters,* 207 S.C. 236, 248, 36 S.E.2d 380; 2 Am. Jur. 294, § 376. This principle is discussed at length in *Constant* v. *University of Rochester,* 111 N.Y. 604, 607, 19 N.E. 631.

In the present case, the court was requested to find that in September Heathy and Bates had a conversation in which Bates told Heathy that he would expect the 5 per cent commission. This finding the court refused to make. The evidence did not compel such a finding, since, although Bates testified to the conversation, Heathy testified that he could not recall it. Without the finding requested, there is no basis for the plaintiff's claim that the defendant had somehow ratified what ought to have been in its agent's mind. As has been pointed out, the court did not find that Heathy knew the plaintiff expected to be paid for its services in handling the liquor consignment.

There is no error.

In this opinion the other judges concurred.