258

GARY A. EVERSON ET AL. *v.* REX, INC.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 8-6110-703

Argued December 4, 1967—decided April 11, 1968

*Robert B. Snow, Jr.,* of New Haven, for the appellant (defendant).

*Archibald G. Marshall,* of New Haven, for the appellee (plaintiffs).

DEARINGTON, J. The complaint alleged that the plaintiffs entered into an agreement with the defendant whereby the defendant agreed to make certain repairs to the plaintiffs' oil burner, but before such repairs had been made the plaintiffs informed the

defendant that they were on the way to Florida. The defendant, so it is alleged, advised the plaintiffs it would be unnecessary to turn off the water and drain the pipes, as it would, as a part of its service and as an extension of its two-year service plan, to which the plaintiffs were subscribers, make periodic checks on the dwelling, keep the furnace functioning and protect the plaintiffs' home from damage due to faulty functioning of the furnace. The plaintiffs further claim that the defendant failed to carry out its agreement and as a result the pipes froze and fixtures broke, causing water to escape to the plaintiffs' damage, as is more fully set forth in the complaint. The defendant's answer, aside from admitting it was in the heating business, disclaimed any knowledge or information of the plaintiffs' allegations sufficient to form a belief. Judgment was rendered for the plaintiffs, and the defendant has appealed, assigning error in the denial of its motion to correct the finding and in that the court's conclusions are not supported by the subordinate facts. Since the plaintiffs' transactions with the defendant were handled by Gary A. Everson, he will hereinafter be referred to as the plaintiff.

The defendant was unsuccessful in its attempt to correct the finding by striking certain facts and adding others. While many errors were assigned in the finding on the ground that facts were found without evidence, the basic claims relate to a construction of the alleged agreement, the element of agency, and the cause of the malfunctioning of the heating system. The court found that the defendant offered a service policy providing for inspection, repair and maintenance of oil burners. The defendant denied such an agreement and relied upon a written agreement which it contends provided only for emergency calls and necessary repairs. The evidence at this posture of the trial indicated that

the plaintiff called the defendant's office and talked with Francis McGuire sometime after the agreement was executed and informed him that he, the plaintiff, was going to Florida for two weeks and difficulty had been experienced with the furnace, which went on and off. He was told by McGuire not to worry as daily checks would be made, for it was a part of the defendant's service. The plaintiff offered to pay an additional cost for the daily checks but was told by McGuire it would be unnecessary. Even if this service be considered a subsequent modification or extension of the original service contract, it was binding if it was the intention of the parties. *Blakeslee* v. *Water Commissioners,* 121 Conn. 163, 182. "The intention of the parties to a contract is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction." *Ives* v. *Willimantic,* 121 Conn. 408, 411; *Sturtevant* v. *Sturtevant,* 146 Conn. 644, 647; *Grote* v. *A. C. Hine Co.,* 148 Conn. 283, 286; *Ginsberg* v. *Mascia,* 149 Conn. 502, 506. It is the privilege of the trier to adopt whatever testimony he reasonably believes to be credible. *Grote* v. *A. C. Hine Co.,* supra, 287. In denying the defendant's motion to correct the finding in this respect, the court committed no error.

The defendant further claims that there was no evidence, as found by the court, that McGuire was an agent of the defendant. The defendant contends that McGuire was merely an employee or servant of the defendant. Ordinarily "agency," in its legal sense, imports commercial dealings, while "servant" relates more to matters of manual or mechanical execution. *Kingan & Co.* v. *Silvers,* 13 Ind. App. 80, 90; *Texas Power & Light Co.* v. *Adamson,* 203 S.W.2d 275 (Tex. Civ. App.). The plaintiff had seen McGuire at the defendant's office, and when he telephoned the defendant's office, McGuire answered the

telephone and talked with him about his oil burner situation. Although the defendant stated to the court that McGuire would be present at the trial, it does not appear he was called as a witness. The plaintiff had the burden of proving agency. *L. C. Bates Co.* v. *Austin, Nichols & Co.,* 143 Conn. 392, 394. Whether McGuire was an agent of the defendant was a matter of fact depending upon the words and conduct of the parties and all the evidence. *Kurtz* v. *Farrington,* 104 Conn. 257, 269; *Torry* v. *Holmes,* 10 Conn. 499, 513. A course of dealing will often lay the foundation for a presumption of agency. *Whittemore* v. *Hamilton,* 51 Conn. 153, 157. The testimony of an alleged principal or agent, although attainable, is not essential to prove the agency. *Carney* v. *Hennessey,* 77 Conn. 577, 586. Agency has to be proved by a preponderance of the evidence. *Iodice* v. *Rusnak,* 143 Conn. 244, 247. The facts available to the court as manifesting a consent and, in the absence of any countervailing evidence, that McGuire was acting as agent for the defendant consisted of the presence of McGuire at the defendant's place of business when the plaintiff went there, the subsequent answering of the defendant's business telephone by McGuire, and the subject matter of the conversation such as the location of the house key and other instructions. It further appears that the plaintiff called the defendant after his return from Florida in regard to the damage to the house and again talked with McGuire and he was told by McGuire to get everything together relative to the actual damage. Upon such evidence, and the entire background of the circumstances, it cannot be said that the court was unwarranted in finding that McGuire was acting in behalf of the defendant.

The defendant sought to strike certain paragraphs in which the court found that freezing had occurred in the radiators. There was evidence that when the

plaintiff returned from Florida on February 6 or 7, he found three radiators split and water and steam escaping from them and that "[t]he house looked like a turkish steam bath." The plaintiff contacted John J. Colpe, a plumbing and heating contractor, who came to the plaintiff's home on February 7. He found three radiators split, the floor saturated with water, and evidence of ice in the area. He further found that the oil burner was not working properly—"it fired and then went right off." On cross-examination, he was asked what kind of pressure caused the leaking and he answered, "I would say some internal pressure which could be ice." He was then asked whether this condition "[c]ould happen even if the furnace was still operating," and he answered, "You mean freeze? No." The defendant produced only one witness, an employee, and the entire examination of this witness related to the effect of freezing in a heating system. Such evidence, together with the reasonable inferences to be drawn, supported the court's finding that freezing had occurred in the radiators.

The defendant also sought to strike a finding that certain plants throughout the house had been killed as a result of the steam. There was evidence that upon the plaintiff's return plants such as geraniums, cyclamens and a philodendron tree had turned brown and had died. If the entire evidence is considered as it relates to the interior condition of the house as found by the plaintiff on his return, a reasonable inference could be drawn from such circumstance that the condition resulting from a defective oil burner caused the plants to die. Common experience and reason may justify the drawing of inferences from a given situation. Here, the force of such an inference was not weakened by any countervailing evidence, for there was none. *O'Dea* v. *Amodeo*, 118 Conn. 58, 61.

Other corrections sought by the defendant would limit the court's finding to the written agreement, and others would narrow the status of McGuire to that of an employee. These matters have already been considered. The defendant, however, is entitled to several corrections, which we have incorporated in the finding as rendered by the court. The finding may be summarized as follows: The defendant offered to the public a service policy relating to the maintaining and servicing of oil burners. The plaintiff purchased such a policy for a period of two years commencing November 22, 1960, for the sum of $39.50. The plaintiff also agreed to purchase fuel oil from the defendant. In December, the plaintiff commenced to experience trouble with the oil burner, and the defendant made numerous service calls. On January 19, 1961, the plaintiff talked with McGuire, agent of the defendant's Branford office, and advised him that he was leaving for a vacation on January 20 and was concerned with the operation of the furnace. McGuire told the plaintiff that the defendant would maintain a watch on the furnace. The plaintiff offered to pay for such service but was told that it was provided for under the service contract. Arrangements were made for the house key to be left in the plaintiff's garage. The thermostat was turned down to between fifty and fifty-five degrees, and the plaintiff left for his vacation. Sometime immediately before his return he called a friend and requested him to turn the thermostat up to seventy-three degrees. The plaintiff returned home February 7 and found several radiators had burst and water and steam were escaping from each. A plumber was called in on February 7 to correct the situation, on February 9 he replaced the electrodes, and the malfunctioning appeared to be corrected. The weather during the plaintiff's absence had been cold, and freezing had occurred in the radiators.

The heating system was an oil fired circulatory hot water radiation type. There was substantial water damage to the floors, rugs, and furnishings, and plants had been killed.

The court reached the following conclusions: (1) The defendant had notice of the malfunctioning of the oil burner, as shown by repeated service calls; (2) the defendant had contracted for the repair, maintenance and service of the burner; (3) the defendant, through its agent, McGuire, agreed to inspect the premises, repair the burner and maintain the furnace so as to prevent harm or injury from a freeze-up; (4) the defendant did not perform the terms of its agreement; (5) as a result, the plaintiff suffered damage to the reasonable value of $853.59. The defendant made the following claims of law, which the court overruled: (1) There was no breach by the defendant of any agreement; (2) the plaintiff's damage was not caused by the defendant's breach.

The defendant has made an attack upon all of the court's conclusions. Our review of the conclusions is restricted to whether they are supported by the subordinate facts, whether they are vitiated by an erroneous application of law, or whether they are unreasonably drawn from the facts found. Maltbie, Conn. App. Proc. § 166. It has been said that a conclusion must stand if it is reasonable, for this would include the other elements. *Bachmann* v. *Reardon*, 138 Conn. 665, 667. The conclusions reached by the court based upon the subordinate facts were justified.

There is no error.

In this opinion WISE and MACDONALD, Js., concurred.